1  JULIA HARUMI MASS (CSB No. 189649)
   HANNAH S. WEINSTEIN (CSB No. 301666)
2  ROTHNER, SEGALL & GREENSTONE
   510 South Marengo Avenue
3  Pasadena, CA  91101
   Telephone:  (626) 796-7555
4  Facsimile:  (626) 577-0124
   E-mail:      jmass@rsglabor.com
5              hweinstein@rsglabor.com

6  Attorneys for Plaintiffs
   California Faculty Association, Jennifer Eagan,
7  Kevin Pina, and G. Chris Brown

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  CALIFORNIA FACULTY                     CASE NO.
    ASSOCIATION, JENNIFER EAGAN;
13  KEVIN PINA; and G. CHRIS BROWN,

14                    Plaintiffs,           **COMPLAINT FOR INJUNCTIVE AND
                                            DECLARATORY RELIEF**
15         v.
                                            [42 U.S.C. § 1983; Cal. Const. Art. 1, § 2]
16  MILDRED GARCIA, in her official
    capacity as Chancellor of the California
17  State University; CATHY SANDEEN, in
    her official capacity as President of
18  California State University, East Bay;
    SYLVIA ALVA, in her official capacity as
19  President of California State University,
    Fullerton; and DOES 1-10,
20
                      Defendants.
21

22

23                       **INTRODUCTION**

24         1.     "To impose any straight jacket upon the intellectual leaders in our colleges and

25  universities would imperil the future of our Nation." *Keyishian v. Bd. of Regents*, 385 U.S. 589,

26  603 (1967) (quoting *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957)). Accordingly, "the

27  First Amendment . . . does not tolerate [directives] that cast a pall of orthodoxy over the

28  classroom." *Id.*

2.      For this reason, faculty at public higher education institutions have broad license over what to teach and how to teach about it. This prerogative can only be limited by their employer in narrow circumstances, such as if a faculty member's communications do not relate to a matter of public concern. *See, e.g.*, *Demers v. Austin*, 746 F.3d 402, 406 (9th Cir. 2014).

3.      Defendant California State University ("CSU") brazenly violated this First Amendment right in November 2023 by directing faculty and lecturers represented by Plaintiff California Faculty Association ("CFA") to refrain from discussing an upcoming labor strike by skilled trades workers represented by Teamsters Local 2010 at the CSU. Days before the planned strike, CFA members at CSU East Bay and CSU Fullerton received messages from their respective human resources departments instructing that faculty were not permitted to use class time to discuss the strike.

4.      When CFA campus leaders at CSU East Bay and CSU Fullerton objected to these directives as violative of academic freedom, campus officials affirmed the directives. At CSU East Bay, campus officials provided further instruction that faculty were barred from using CSU East Bay online platforms to communicate with students in their classes about the strike. CFA is informed and believes that these directives originated with the CSU Chancellor's office.

5.      Many CFA members regularly include discussion of current events of public concern, including events occurring on CSU campuses, as part of their teaching. For over eighty years, both the U.S. Supreme Court and the California Supreme Court have recognized that labor disputes are newsworthy events that constitute protected matters of public concern. *See Thornhill v. Alabama*, 310 U.S. 88, 102 (1940) ("In the circumstances of our times the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution."); *Emde v. San Joaquin Cnty. Cent. Lab. Council*, 23 Cal.2d 146, 154 (1943) ("[T]he peaceful settlement of labor contention is a matter of vital public concern . . . .").

6.      CSU's prior restraint of speech on the topic of the Teamsters strike and collective bargaining activities violates CFA's members' academic freedom, which is protected by the First Amendment to the U.S. Constitution and Article I, § 2 of the California Constitution. As labor

1  unrest—including CFA's own strike planned for December 4-7, 2023—continues at CSU

2  campuses, it is critically important that faculty and other public employees are not chilled in their

3  discussion of these matters of public concern in the classroom or through other campus platforms

4  through which education is delivered.

5        7.     Accordingly, Plaintiff CFA and three of its affected members seek injunctive and

6  declaratory relief to prevent the CSU from continuing to impose a prior restraint on the speech

7  and academic freedom of CSU faculty in violation of the First and Fourteenth Amendments to

8  the U.S. Constitution and Article I, § 2 of the California Constitution.

9  **JURISDICTION**

10        8.     Plaintiffs' federal claim arises under the First and Fourteenth Amendments to the

11  U.S. Constitution and 42 U.S.C. § 1983, providing this Court jurisdiction under 28 U.S.C.

12  § 1331. The Court has supplemental jurisdiction over Plaintiffs' state constitutional claim under

13  28 U.S.C. § 1367 and jurisdiction to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202.

14  **VENUE**

15        9.     Venue is proper in the Northern District of California under 28 U.S.C. §§ 1391(b)

16  because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred,

17  and continues to occur, in this district.

18  **INTRADISTRICT ASSIGNMENT**

19       10.    Assignment to the Oakland Division of this Court is proper under Local Rule 3-

20  2(d) because a substantial part of the events or omissions giving rise to Plaintiff's claims

21  occurred, and continues to occur, in Alameda County.

22  **PARTIES**

23       11.    Plaintiff California Faculty Association is a labor organization that represents a

24  bargaining unit of approximately 29,000 employees of the California State University at its 23

25  campuses. CFA is a membership organization whose members include Jennifer Eagan, a

26  professor of philosophy at CSU East Bay; Kevin Pina, a lecturer of journalism at CSU East Bay;

27  and G. Chris Brown, a professor of criminal justice at CSU Fullerton, Individual Defendants.

28  / / /

12. Plaintiff Jennifer Eagan is a Professor of Philosophy and Public Affairs and Administration at CSU East Bay. Eagan is a member of CFA and currently serves as the Faculty Rights Chair for CFA at CSU East Bay.

13. Plaintiff Kevin Pina is a filmmaker, journalist, and media consultant and he is a lecturer in the Department of Communication at CSU East Bay. He is a member of CFA and currently serves as CFA's Lecturers' Representative at CSU East Bay.

14. Plaintiff G. (Gregory) Chris Brown is an Associate Professor of Criminal Justice at CSU Fullerton.  He is a member of CFA and currently serves as the President of the CFA chapter at CSU Fullerton.

15. Defendant Mildred Garcia, sued in her official capacity, is and at all relevant times was the Chancellor of California State University. As such, she is responsible for CSU's policies, practices, and procedures and exercises authority and oversight over CSU.

16. Defendant Cathy Sandeen, sued in her official capacity, is and at all relevant times was the President of CSU East Bay. As such, she is responsible for CSU East Bay's policies, practices, and procedures and exercises authority and oversight over CSU East Bay.

17. Defendant Sylvia Alva, sued in her official capacity, is and at all relevant times was the President of CSU Fullerton. As such, she is responsible for CSU Fullerton's policies, practices, and procedures and exercises authority and oversight over CSU Fullerton.

18. Plaintiffs are ignorant of the true names and capacities of Defendants sued as Does 1-10, inclusive, and therefore sue these Defendants by such fictitious names and capacities. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and on that basis allege, that each fictitiously named Defendant is responsible in some manner for the occurrences herein alleged, and that the violation of Plaintiffs' rights as alleged in this complaint were proximately caused by the conduct of such Defendant.

19. Plaintiffs are informed and believe, and on that basis allege, that at all relevant times each of the Defendants was the agent and/or employee of the remaining Defendants and was acting within the course and scope of such agency and/or employment.  To the extent that

1   the conduct and omissions alleged in this complaint were perpetrated by one or more of the

2   Defendants, the remaining Defendants confirmed and ratified said conduct and omissions.

3   **FACTUAL ALLEGATIONS**

4   20.   On or about November 6, 2023, Teamsters Local 2010, which represents about

5   1,100 skilled trades workers employed by CSU, announced it would hold a one-day unfair labor

6   practice strike on November 14, 2023.

7   21.   On or about November 8, 2023, the Associate Vice President of Human

8   Resources and Payroll Services for CSU East Bay send a letter to the "campus community,"

9   including CFA members employed at CSU East Bay, with information about CSU East Bay's

10  planned operations if the Teamsters strike occurred. This letter, a true and correct copy of which

11  is attached as **Exhibit A**, stated, *inter alia*: "Classroom time cannot and should not be used by

12  faculty to discuss issues related to the strike."

13  22.   During a meeting with managers on or about November 9, 2023, at which

14  Defendant Cathy Sandeen was present, faculty leaders raised concern about the message's

15  prohibition of the use of class time to discuss the Teamsters strike. Campus leaders at that

16  meeting communicated to faculty present that no CSU East Bay platforms could be used to post

17  information about the strike to students.

18  23.   On or about November 13, 2023, the Chair of the Academic Senate at CSU East

19  Bay, Christina Chin-Newman, wrote to Vice President for Administration and Finance Myeshia

20  Armstrong and Interim Provost Kim Greer, alerting them that the instruction faculty members

21  had received not to discuss issues related to the Teamsters strike in the classroom violates CSU

22  East Bay's policy on academic freedom, which states, *inter alia*: "Faculty members are free to

23  choose ways to relate the subject matter of their courses to matters they themselves deem

24  relevant, including, but not limited to, public affairs, current events and community issues." A

25  true and correct copy of CSU East Bay's Academic Freedom policy is attached hereto as **Exhibit**

26  **B.** Professor Chin-Newman asked that CSU East Bay administration issue a clarification.

27  24.   In response, Interim Provost Kim Greer sent Chin-Newman a copy of a message

28  she had previously sent to Jennifer Eagan, who had objected to the prohibition as a representative

of CFA. The message stated that the message prohibiting the use of class time to discuss the strike "was reviewed by numerous stakeholders before it was sent by Human Resources" and, "While we are not going to edit the messages that went out yesterday, Academic Affairs will be mindful of the nuances and interpretations of the statement if any further communications related to concerted activities are sent out to the campus community in the future."

25.     Plaintiff Jennifer Eagan ("Eagan") took a personal day on November 14, 2023, to avoid teaching and show her solidarity on the day of the Teamsters strike. Eagan teaches classes on critical thinking and environmental ethics, and at the time of the Teamsters strike, Eagan's critical thinking class was working on the topic of moral reasoning. She considered posting a prompt on the online platform faculty use to communicate with students that would ask students to consider the moral dilemma posed by a picket line. However, due to her knowledge of CSU East Bay's statements prohibiting the use of class time and campus platforms to communicate with students about the strike, she refrained from posting a prompt about the strike. Although she believes the prohibition violates faculty rights to academic freedom, Eagan was aware of threatened budget cuts and a pending program review and did not want to place her department at greater risk for elimination of positions or programs by violating the directive. Both the Teamsters strike and a CFA strike planned to take place on December 5, 2023 at CSU San Francisco ("San Francisco State") provide opportunities to discuss ethical quandaries in classes Eagan is teaching this term, and she would normally include such topics in her class discussions.

26.     Plaintiff Kevin Pina ("Pina") is a filmmaker, journalist, and media consultant and he is a lecturer in the Department of Communication at CSU East Bay. He regularly discusses current events, including events that occur on campus, in his classes. One of his classes produces television segments about current news stories. Labor negotiations and related work actions at CSU are among the topics that Pina's journalism students may choose for the stories they produce. He has used images from this year's United Auto Workers strike as an example in his class. Pina views the upcoming CFA strike at San Francisco State as an opportunity to collaborate with another campus in covering an important story.

27.    Pina taught on the day of the Teamsters' strike at CSU East Bay. Aware of the importance of free speech, particularly in the field of journalism, Pina did not refrain from discussing the Teamsters' strike in his Visual Communications and Culture course, but he did cover the topic differently than he otherwise would have. He made his students aware of CSU's prohibition on the use of class time to discuss the strike but proceeded to discuss with them visually communicative aspects of the picket line and related them to specific reading material in the course syllabus.

28.    On November 13, 2023, CFA members at CSU Fullerton received an email from CSU Fullerton's Human Resources Division instructing, *inter alia* "Classroom time cannot be used to discuss issues related to the strike or active collective bargaining activities." A true and correct copy of this email is attached hereto as **Exhibit C**.

29.    Plaintiff G. Chris Brown is an Associate Professor of Criminal Justice at CSU Fullerton.  He regularly discusses current events in his classes.  Brown is not teaching any courses at CSU Fullerton during this semester, but in the coming Winter Session, beginning December 16, 2023, he will be teaching a course entitled "Gangs and the Criminal Justice System."  In this class, he often uses current events to make analogies with concepts he is teaching.  Had he been teaching this course during the Teamsters strike, he would have analogized employees' worries about retaliation for striking to gang members' concerns about retaliation for their conduct.

30.    Although the Teamsters strike has concluded, neither CSU East Bay nor CSU Fullerton has rescinded their directives to faculty to refrain from speaking about the strike or collective bargaining activities during classroom time or, at CSU East Bay, through online platforms used to communicate with students ("Directives").

### INJUNCTIVE RELIEF ALLEGATIONS

31.    Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraph 1 through 30 as though fully set forth herein.

32.    If an injunction does not issue enjoining Defendants from leaving the Directives in place, Individual Plaintiffs and Plaintiff CFA's members will be irreparably harmed.

33.     Plaintiffs have no plain, speedy, and adequate remedy at law.

34.     If not enjoined by this Court, Defendants will continue to implement their Directives in derogation of the rights of the individual Plaintiffs and Plaintiff CFA's members.

## DECLARATORY RELIEF ALLEGATIONS

35.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 34 as though fully set forth herein.

36.     An actual and substantial controversy exists between Plaintiffs and Defendants as to their respective legal rights and duties.  Plaintiffs contend that the Directives are unconstitutional, and Defendants contend they are lawful.

## FIRST CLAIM FOR RELIEF

[42 U.S.C. § 1983; First and Fourteenth Amendments to the United States Constitution]

37.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraph 1 through 36 as though fully set forth herein.

38.     Individual Plaintiffs and Plaintiff CFA's members have a right to engage in speech protected by the First Amendment to the United States Constitution.

39.     *Pickering v. Board of Education*, 391 U.S. 563 (1968) governs whether the First Amendment protects speech by faculty members of public higher education institutions that is related to scholarship or teaching.  *Demers v. Austin*, 746 F.3d 402 (9th Cir. 2014).  Such speech is protected if it addresses a matter of public concern and the faculty member's interest in commenting upon matters of public concern outweigh the employer's interest in promoting the efficiency of its public services.  *Id.* at 412.

40.     Labor disputes, such as the Teamsters strike, are matters of public concern. *Thornhill v. Alabama*, 310 U.S. 88 (1940); *see also Nat'l Ass'n of Gov't Emps., Inc. v. Nat'l Fed'n of Fed. Emps.*, 844 F.2d 216, 220 (5th Cir. 1988) (citing *Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 62-63 (1966) and *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 272-73 (1974)); *Brown v. Dep't of Transp., F.A.A.*, 735 F.2d 543, 546-48 (Fed. Cir. 1984); *Aguilar v. Omnitrans*, 2009 304423, / / /

1    at *7 (C.D. Cal. Feb. 6, 2009); *Int'l Ass'n of Firefighters Local 3233 v. Frenchtown Charter*

2    *Twp.*, 246 F.Supp.2d 734, 737 (E.D. Mich. 2003).

3        41.     Defendants' Directives prohibit Individual Plaintiffs and Plaintiff CFA's members

4    from speaking on a matter of public concern.

5        42.     It cannot be presumed that statements by Individual Plaintiffs or Plaintiff CFA's

6    members about the Teamsters strike or other collective bargaining matters would have impeded

7    their proper performance of daily duties in the classroom or would have interfered with the

8    regular operation of the universities generally. *See Pickering v. Bd. of Ed.*, 391 U.S. 563, 572-73

9    (1968). The Directives do not explain why or how such statements might disrupt the efficient

10    operations of the universities. Indeed, as the allegations above demonstrate, such statements

11    were or could have been a valuable aspect of Individual Plaintiffs' pedagogy. Thus, the interests

12    of Individual Plaintiffs and Plaintiff CFA's members in commenting on the Teamsters strike and

13    other collective bargaining matters outweighs Defendants' interest in promoting efficiency of its

14    public services. *See, e.g.*, *Blum v. Schlegel*, 18 F.3d 1005, 1012 (2nd Cir. 1994) ("[T]he efficient

15    provision of services by a State university[] . . . actually depends, to a degree, on the

16    dissemination in public fora of controversial speech implicating matters of public concern.")

17    Accordingly, through the Directives, Defendants, acting under color of state law, have deprived

18    Individual Plaintiffs and Plaintiff CFA's members of their First and Fourteenth Amendment

19    rights in violation of 42 U.S.C. § 1983.

20        43.     The Directives are content-based in that they restrict speech related to the

21    Teamsters strike and other collective bargaining matters but not speech concerning other topics.

22    The Directives are therefore presumptively unconstitutional. *Reed v. Town of Gilbert, Ariz.*, 576

23    U.S. 155, 163 (2015).

24        44.     "Given the interest of the faculty and student body in intellectual freedom,"

25    Defendants cannot show that the content-based Directives are narrowly tailored to serve a

26    compelling government interest. *Khademi v. South Orange Cnty. Cmty. Coll. Dist.*, 194

27    F.Supp.2d 1011, 1027 (C.D. Cal. 2002) (citing *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603

28    (1967).

45.     The Directives therefore constitute unlawful prior restraints in violation of the First Amendment.  As such, Defendants, acting under color of state law, have deprived Plaintiffs of their First and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

## SECOND CLAIM FOR RELIEF

[Article 1, § 2 of the California Constitution]

46.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 45 as though fully set forth herein.

47.     As public employees, Individual Plaintiffs and Plaintiff CFA's members have a right to engage in speech protected by Article 1, § 2 of the Constitution of the State of California.

48.     Through the Directives, Defendants, acting under color of state law, have deprived Induvial Plaintiffs and Plaintiff CFA's members of rights secured by Article 1, § 2 of the Constitution of the State of California.

## PRAYER FOR RELIEF

WHEREFOR, Plaintiffs pray for:

1.      An order preliminarily enjoining Defendants, and each of them, from implementing and enforcing the Directives pending full resolution of this matter on its merits;

2.      A declaration that the Policy violates the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, and is therefore void and of no force or effect;

3.      A declaration that the Policy violates Article 1, § 2 of the Constitution of the State of California, and is therefore void and of no force or effect;

4.      A judgment permanently enjoining Defendants, and each of them, from enforcing the Directives;

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1       5.     An order awarding Plaintiffs and their attorneys reasonable attorneys' fees and

2   costs of suit incurred herein, in an amount according to proof, pursuant to 42 U.S.C. § 1988; and

3       6.     Such other and further relief as this Court deems just and proper.

5   DATED:  December 1, 2023          JULIA HARUMI MASS
                         HANNAH S. WEINSTEIN
6                         ROTHNER, SEGALL & GREENSTONE

                         By_____/s/ Julia Harumi Mass_____
8                          JULIA HARUMI MASS
                         Attorneys for Plaintiffs California Faculty
9                         Association; Jennifer Eagan; Kevin Pina,
                         and G. Chris Brown

# Exhibit A



November 8, 2023

Dear Campus Community:

As you may be aware, the Teamsters Local 2010 Union has announced plans for a potential strike on our campus on Tuesday, November 14. We understand there may be strikes on other CSU universities throughout the system. CSU representatives have not been able to reach a salary agreement with the Teamsters Union through the collective bargaining process. While we remain committed and hopeful of reaching an agreement, I want to share with you some important information should a strike happen.

I want to assure you that should a strike take place, our university, and all of the other CSU universities will remain open. We anticipate that all campus operations and administrative services will be available and scheduled events will be held. The university will remain open to students, staff and the public. Our university police and security will be serving the campus to ensure a safe environment for all, which is always one of our primary goals.
If a strike should occur, please note the following:

- No individual, including students, can be compelled to take a position on the strike.
- Classroom time cannot and should not be used by faculty to discuss issues related to the strike.
- Students cannot be compelled to walk out of class, walk picket lines, stay away from campus or support the strike as part of a class assignment or in exchange for a grade.
- Striking staff members may not block or otherwise obstruct student access to campus, campus services or the classroom.

It's possible that media may be on campus and ask you for comment. I encourage you to direct inquiries to Kim Hawkins, at kimberly.hawkins@csueastbay.edu or 415.793.9219.

Again, Cal State East Bay will maintain full university operations with as minimal disruption to students, faculty, staff and guests as possible.

We respect our employees rights and remain committed to the collective bargaining process.

Questions may be directed to Ed Park, HR Manager, ed.park@csueastbay.edu or 510-885-3101.

Sincerely,

André Johnson
Associate Vice President
Human Resources and Payroll Services

# Exhibit B



## ACADEMIC SENATE
http://www.csueastbay.edu/senate
510-885-3671

---

*21-22 FAC 9; Senate approved 4/26/22, President approved 5/23/22*

### California State University, East Bay Statement on Academic Freedom

The mission of California State University, East Bay is grounded in the values of diversity, equity, inclusion and social justice. CSUEB's Statement on Academic Freedom was developed in order to comply with regional accreditation standards and to support the Academic Senate's commitment to examine and revise its official statements, policies and procedures to reflect an anti-racist stance and to take this stance in developing new official statements, policies, and procedures. This statement should be read with this context in mind. All California State University faculty are expected to comply with the CSU policy prohibiting discrimination, harassment and retaliation.

*Preamble*

1.      Academic freedom has been called "the philosophical key to the whole enterprise of higher education."[1]  Academic freedom belongs to the academic profession as a whole to pursue inquiry and to teach, free from external interference, limited and guided only by the principles of the profession.  It guarantees to each faculty member, researcher, librarian, and counselor the right to teach, conduct research and publish, and to speak as a citizen even when material may be controversial.

2.      Academic freedom is not an individual employment benefit provided to those in a restricted number of academic appointments.  There must be no invidious distinctions between

---

[1] Louis Menand, *The Marketplace of Ideas: Reform and Resistance in the American University* (New York: W.W. Norton, 2010), 131.

those who teach or conduct research regardless of whether they hold full-time or part-time appointments or whether their appointments are tenured, tenure-track, or contingent.  All faculty members should have access to the same academic freedom and to due-process protections and procedures.

3.      Academic freedom is not a civil right like freedom of speech.  Although it grants considerable scope to the consciences of individual scholars, academic freedom is not an individual right of professors to do whatever they wish in their research and teaching or to say whatever they might in public remarks.  Academic freedom is ultimately the collective freedom of the scholarly community to govern itself, in the interest of serving the common good in a diverse and democratic society.

*The 1940 Statement of Principles*

4.      The faculty and administration of California State University, East Bay endorse the nationally recognized 1940 *Statement of Principles on Academic Freedom and Tenure,* with its 1970 Interpretive Comments, formulated by the American Association of University Professors (AAUP) and the American Association of Colleges and Universities (AACU), which defines academic freedom as follows:

> 1. Teachers are entitled to full freedom in research and in the publication of the results, subject to the adequate performance of their other academic duties; but research for pecuniary return should be based upon an understanding with the authorities of the institution.
>
> 2. Teachers are entitled to freedom in the classroom in discussing their subject, but they should be careful not to introduce into their teaching controversial matter which has no

relation to their subject.[2]  Limitations of academic freedom because of religious or other aims of the institution should be clearly stated in writing at the time of the appointment.

3. College and university teachers are citizens, members of a learned profession, and officers of an educational institution. When they speak or write as citizens, they should be free from institutional censorship or discipline, but their special position in the community imposes special obligations.  As scholars and educational officers, they should remember that the public may judge their profession and their institution by their utterances.  Hence they should at all times be accurate, should exercise appropriate restraint, should show respect for the opinions of others, and should make every effort to indicate that they are not speaking for the institution.[3]

*Academic Freedom in Research*

5.      Faculty members are entitled to full freedom in research and in the publication of the results, but researchers should conform to accepted intellectual and disciplinary standards. Legitimate restraints on research can be established and policed only by the community of trained researchers itself.  Faculty regulation of research is accomplished mainly through systems of peer review, including appointment, reappointment, promotion and tenure processes as governed by the CSU-CFA Collective Bargaining Agreement (CBA) and relevant University policies enacted by the Academic Senate.

6.      In all forms of faculty research, the faculty member rather than the University should determine the subject matter, the intellectual approach and direction, and the conclusions, and should control disposition of intellectual property rights.

---

[2] The second 1970 Interpretive Comments reads: "The intent of this statement is not to discourage what is 'controversial.'  Controversy is at the heart of free academic inquiry which the entire statement is designed to focus.  The passage serves to underscore the need for teachers to avoid persistently intruding material which has no relation to the subject."

[3] This provision is to be interpreted in light of the lengthy fourth 1970 Interpretive Comment.

7.      The University may ensure that researchers comply with mandated human-subject regulations and similar government regulations, but proposed or adopted campus rules related to research should be examined for potential abridgements of academic freedom.

8.      Academic freedom does not entitle faculty members to ignore financial conflicts of interest.  It does not guarantee faculty members the freedom to accept research funding regardless of the conditions attached.  Donor funding agreements should be fully transparent and the faculty's rights to both academic freedom and collective regulation of research efforts must be upheld.

9.      Where public records requests seek prepublication communications or other unpublished academic research materials, compelled disclosure would have a severe chilling effect on intellectual debate among researchers.  The University will contest such requests to the limits of applicable state and federal law.

10.     Artistic expression in the classroom, the studio, the theater, and the workshop merits the same assurance of academic freedom that is accorded to other scholarly and teaching activities.


*Academic Freedom in Teaching*

11      Academic freedom protects an instructor's right to select the materials to be used in a class, to determine the approach to the subject and the pedagogical methods to be employed, to design the assignments, and to assess student academic performance and record grades regardless of teaching modality —all without having their decisions subject to the veto of a department chair, dean, or other administrative officer.  These individual rights may be limited by curricular requirements approved by the faculty of a department or college or by the Academic Senate or by provisions of the CBA.

12.     Teachers must educate, not indoctrinate, students.  But instructors can assert viewpoints that remain controversial.  Indoctrination occurs when an instructor insists that students accept as truth propositions that are in fact professionally contestable, without allowing students to challenge their validity or advance alternative understandings.  Teachers are not obliged to strive for some abstract and impractical ideal of "neutrality" or "balance."  To demand that all interpretations must be presented is to demand the impossible.  Faculty members are free to

choose ways to relate the subject matter of their courses to matters they themselves deem relevant, including, but not limited to, public affairs, current events and community issues.

13.     Discussions in the classroom are not intended for the public at large.  Classroom expression of college and university teachers, in person or online, should be considered privileged communications.  The unauthorized monitoring or recording of classroom discussions violates academic freedom.

*Expression as Citizens*

14.     The University guarantees to its faculty the rights shared by all citizens including the right to free expression, the right to peacefully assemble, and the right to criticize and seek revision of the institution's regulations and of state and federal laws.

15.     A faculty member's expression of opinion as a citizen, including in subject areas unrelated to the faculty member's academic discipline, cannot constitute grounds for dismissal unless it clearly demonstrates the faculty member's unfitness to serve.  Such statements rarely bear upon a faculty member's fitness.  Moreover, a decision should take into account the faculty member's entire record as a teacher and scholar.

16.     As a general rule, public comments made by faculty members as citizens do not represent the institution.  Hence, the University need not, and in most cases should not, publicly criticize a faculty member's controversial views.

17.     The University must apply to a faculty member's statements on social media the same fitness standard appropriate for older formats.  The University must also defend faculty members against threats directed against them and resist threats and ultimatums directed at the institution.

18.     Academic freedom includes the right of faculty members to express views on matters having to do with university governance.  It is a faculty member's right not only to disagree with administrative decisions but also to criticize them without fear of retaliation or reprimand.

19.     Faculty members are neither subordinate to, nor do they report to, members of the administration. The faculty's role in matters of faculty status, curricular matters and aspects of student life related to the curriculum is and must be independent of the administration.

*Enforcement and Responsibility*

20.     Academic freedom is protected by guarantees of academic due process.  In the California State University, these are maintained by the relevant provisions of the CBA as well as the Constitution and Bylaws of the University Faculty .  If a faculty member alleges that an action taken by the University with regard to that member's employment was based on considerations that would violate the principles of this statement, then the faculty member should be free to employ a grievance mechanism provided by the CBA.  The basic principle is that only a faculty member's academic peers can pass valid judgment on that faculty member's fitness to teach or conduct research.

21.     With freedom comes responsibility.  Faculty members must recognize their obligation to perform their academic duties responsibly and to comply with the internal regulations of the University, the provisions of the CBA, and relevant laws.  Equally important, as the AAUP and the AACU stated in a 1958 statement, "a necessary precondition of a strong faculty is that it have first-hand concern with its own membership."[4]  Hence the faculty's greatest responsibility is to diligently and knowledgeably defend academic freedom and professional standards in the service of the common good in a diverse and democratic society.

---

[4] "Statement on Procedural Standards in Faculty Dismissal Proceedings," *AAUP Policy Documents and Reports*, 11th ed. (Baltimore: AAUP and Johns Hopkins University Press, 2015), 91.

# Exhibit C

**From:** Human Resources <hr@fullerton.edu>
**Date:** November 13, 2023 at 8:13:22 AM PST
**To:** DL-Campus Employees <CampusEmployees@exchange.fullerton.edu>
**Subject: Message Regarding Teamsters Strike on November 14**
**Reply-To:** Human Resources <hr@fullerton.edu>

## Message Regarding Teamsters Strike on November 14

The Teamsters have announced plans to strike on our campus tomorrow, November 14, 2023. This was announced as a strike at all CSU campuses. CSU representatives have not reached a salary agreement with the Teamsters through the collective bargaining process.

While we remain hopeful that an agreement will be reached, here is some important information about the strike. On the day of the strike, our campus and all other CSU campuses will remain open. For our campus, we anticipate that all campus operations and administrative services will be available and scheduled events will be held. Student instruction and other student services will continue during this time. As a public institution, the university is obligated to provide student services. The strike should not interfere with students being able to complete their semester courses.

Key points:

1. No individual, including students, can be compelled to take a position on the strike.
2. Classroom time cannot be used to discuss issues related to the strike or active collective bargaining activities.
3. Students cannot be compelled to walk out of class, walk picket lines, stay away from campus, or support the strike as part of a class assignment or in exchange for a grade.

4.  There may be picket lines at the entrance to the campus. You may cross this picket line to enter the campus or choose an entrance that does not have a picket line. You are not obligated to provide the members of a picket line with any personal information, including your name or any other information.

During the strike, there may be members of the media on campus who ask you to comment. If you would rather not talk with the media members, please refer them to the director of news media: Cerise Metzger, cmetzger@fullerton.edu.

The university remains committed to providing students with the highest quality educational experience. We respect our Teamsters and remain committed to the collective bargaining process. If you have any concerns surrounding the job action activities, you may reach out to Labor and Employee Relations at ler@fullerton.edu. We appreciate your understanding, cooperation and patience during this period of time.



View this email in your browser